and the last case for argument is 20-3618 Christian Action League of MN v. Mike Freeman et al. the It's car or when you're may proceed. Your Honor, may it please the court. I represent appellants Christian Ashley and Ann Redding and they re-seek reversal of the Rule 12 dismissal based on standing and mootness. Christian Ashley and Ann Redding engage in sort of garden variety boycotting, if you will. They're pro-woman. That means they're anti-pornography, anti-strip clubs, and anti-female exploitation. And so they do that by sending out postcards discouraging support and advertising for different efforts. And one of them was City Pages mentioned the complaint. We'll get to that under mootness. Why has Christian Ashley and Ann Redding suspended their boycotting operations, which involve sending out postcards and so forth, and taking aggressive stands with respect to people advertising in organizations that don't support their goals? Well, first of all, they sent a postcard to an advertiser in the City Pages. She was an attorney and she had a law firm. She read the statute, 609.748, and she read it that that prescribed the conduct that Christian Ashley was engaging in. Secondly, the Hennepin County District Court issued a harassment restraining order on the presentation by that attorney Frost and her law firm. My client received that restraining order regarding her conduct. So Attorney Frost, her law firm, and the Hennepin County District Court saw the postcard boycotting as unwanted acts that had substantial effect on privacy not protected by the First Amendment. The Hennepin County Attorney's Office now argues that Attorney Frost, her law firm, and the Hennepin County District Court, the position on the statute isn't relevant to my client's interpretation or credibility of her interpretation of the statute. Judging the lower court, once I went over this with Ms. Frost, our complaint made a point that the language regardless of the relationship between the actor and the intended target in 609.748 subdivision A1, definition of harassment, had never been construed by a Minnesota appellate court. Our concern about the language that the repeated unwanted acts affecting privacy, so forth, regardless of the relationship between the actor and the intended target, includes all First Amendment speech. Of course it does. Now when I read the statute, I said, well, why didn't they accept First Amendment speech? And I looked at the next statute, 609.749, which is the criminal harassment statute, which has an express provision protecting First Amendment speech. So why is it the criminal statute has an exception for First Amendment speech, and the civil statute, which has this very broad language saying, a court will disregard the relationship between, have we ever heard of anything like that? Have we ever heard of a definition of harassment or negligence or any tort, where you're supposed to, the court gets a direction, disregard the relationship between the parties? Well, that's from a foreign world. But if you're going to do that, then at least protect First Amendment speech, because First Amendment speech is higher than the statute. And so why is it that the county attorney disagrees that my client has a reasonable fear of prosecution because of four things? Just a follow-up question. Explain to me again how regardless of the relationship between the actor and the intended target necessarily implicates First Amendment speech or protected speech. Sure. Attorney Frost, in her law firm, argued that that means that you can't take into account the political relationship between the actor and the intended target. The actor was my client. But the speech itself may still be protected without regard to the relationship between the parties, right? I'm not sure. I guess I'm following how that necessarily implicates the First Amendment. Well, that's exactly my point, is that it's so broad that it implicates there should be an exception for the First Amendment. Well, have Minnesota courts interpreted this to exclude First Amendment protected speech? I thought the Minnesota Court of Appeals had done that. And I don't have the case in front of me, but in Dunn, am I right? They have not. There has never been a challenge to the language regardless of the relationship between the actor and the intended target. But the rest of the statute has, right? That's correct, but I disagree with the lower court. As the lower court set it up, she said in page 9 that here's how you define harassment in Minnesota, and she includes regardless of the relationship between the actor and the intended target. Then goes on to cite the Dunham case and the Wichelt cases, both court of appeals cases you're probably referring to, but neither of them were challenges to the language regardless of the relationship between the actor and the intended target. And so my client is relying on Attorney Frost, relying on the Hennepin County District Court, relying on me. And when we look at that, the statutory text in these cases, there's never been a case interpreting that. Now, my client has been injured by the Hennepin County District Court's order. She had to represent herself. There was an embarrassment, all those things. She's suspended her activities because this should be cleared up. This is an Article III issue. We're not getting to the merits. In an Article III issue, my client has been harmed, and she continues to have harm. And if the court's response is, oh, well, that harassment restraining order, that's just part of being a citizen. No, that harassment restraining order is her foundation for her reasonable fear that it's going to happen again. And so we have to look at the statutory text. We have to look at the absence of the First Amendment exception. We have to look at Frost's actions. We have to look at the Hennepin County District Court's actions. Don't you, though, have to have a reasonable fear of prosecution, which is different than an HRO, right? That's right. We have to have a reasonable fear of prosecution or some sort of action, right? So with respect to a reasonable fear of enforcement, we discussed that earlier this morning, too. But the county has nothing to do with the issuance of an HRO, right? It's very similar to the situation with respect to 281 Care Committee, if you recall. The 281 Care Committee had a civil enforcement mechanism, but the county attorneys were still held to be liable. So here there is a civil enforcement mechanism granted in Hennepin County District Court, not administrative. And they are part of the enforcement scheme, just like the county attorneys were in that case involving 281 Care Committee. And so any time that you're connected to enforcement as a government official, you're liable to be sued. So this morning we talked about the county attorneys being sued because the statute says, may prosecute a violation of 211B. Here they may prosecute a violation of harassment restraining order. It's the same thing. We shouldn't become distracted by the fact that there are other civil proceedings that might occur. The important thing is that the government official being sued is part of the enforcement mechanism. And so this goes to Friday's opinion in Women's Whole Health. It said we're not going to start suing courts and clerks, are we? Let me ask it this way. In order for you to prevail, don't we have to find that the intended conduct of your client is prescribed by the statute? Yes. I believe that for standing purposes, there has to be an injury in fact. And part of that is my client chilled or suspended their activities.  So do your clients intend that their conduct have a substantial adverse effect on safety, security, or privacy? As I mentioned, privacy is not defined in the statute. Ms. Frost and her law firm, the Hennepin County District Court's position, which I infer, is that privacy includes unwanted communications. So typical garden variety pro-life communications, if you're trying to convince the public, they're unwanted acts. They are received by the person. Let's say they're written communications. And this was Frost and her law firm's position. And the Hennepin County District Court issued a decision. I would agree, if the Hennepin County District Court hadn't issued a decision, hadn't actually issued a harassment restraining order on my client subject to criminal enforcement, it's a different case. Does it matter that you didn't appeal that? No, it does not matter. I believe that we resolved that. I believe, if I recall, it was a settlement agreement. But you're basically saying, look, we're stuck with this district court opinion and this Ms. Frost litigation position. And that's an indication of how we're at risk going forward. But you didn't actually challenge those positions to the full extent of your ability. Yeah, and it was based on cost, expense, how best to wrap it up. Did Frost want to continue it? It was based on all sorts of things. It just seems odd that we can blame Attorney Frost for taking a litigation position in a case that you didn't appeal the decision. And somehow that's relevant here. I guess I'm not sure how Attorney Frost's litigation position is relevant here. The harassment restraining order was issued without a hearing. But then it went to a hearing. We showed up, and then it was resolved. There was an opportunity for judicial resolution. And there was, and there was an opportunity, I assume, for an appeal in this case. That's right, Your Honor. But that position on Friday by the U.S. Supreme Court was rejected. The U.S. Supreme Court said that you can sue the state licensing officials regarding enforcing Texas law. The position of the other side was, oh, you can always have your defenses in state court. You don't get a pre-enforcement challenge. But because there was a provision of state law in Texas saying that those licensing officials enforce this law, that means you can have a pre-enforcement challenge against them. Now, it still gets to the point where the conduct is prescribed. And the language of the statute basically supports the Hennepin County District Court decision. The Hennepin County District Court decision was, this is a communication that has an adverse effect on privacy, and we're not going to take into account the relationship between the political parties. Mr. Carlisle, would you address the mootness question? The what? The mootness question. Yes. On the mootness, the provisions of the complaint are described or quoted in my reply brief that my client continues to do the same kind of boycotting of other organizations. And it wasn't just City Pages. So she continues. Her complaint is with 609.748. She continues after City Pages is closed down, which, of course, they're thankful for. Thank you. I'll save the rest of my time for rebuttal. Thank you, Mr. Cardinal. Ms. Pierce? Good morning, and may it please the court. Kelly Pierce on behalf of appellee Hennepin County attorney Mike Freeman. The court should affirm the dismissal of appellant's case for two reasons. First, appellants lack standing to assert this claim against this defendant. And that's so because their conduct in contacting businesses to try to persuade them to stop advertising in the City Pages isn't prescribed by Minnesota's anti-harassment laws. Second. That's an interpretation of the statute. That's an interpretation of the statute that the Minnesota Court of Appeals in Dunham came to. Okay. What's that case? That's Dunham v. Rohr. It's cited throughout our briefs and in the district court opinion. What about this relationship between the actor and intended target? Was that an issue with Dunham? The court in Dunham construed that whole subdivision. So 609.748, and it's subdivision 1A1. That's the definition of harassment. So it was this exact language. That was an issue in Dunham, Your Honor, yes. Well, what did the district court here do with that particular language? Your friend has indicated that the district court here, and I'm talking about the state district court, placed some emphasis on the fact that that had not been interpreted. Could you address that issue? I don't believe that's the case, Your Honor. If so, it's not pled in the complaint that this specific language, regardless of the relationship between the actor and the intended target, had any part of the underlying harassment restraining order process. As the court may know, in Minnesota, a harassment restraining order like this, you can get on an ex parte basis, and that's what happened here. There was a temporary restraining order issue. And then once appellants got counsel, they came up to a hearing, and appellants argued vociferously that their conduct was not harassment under the statute, and that's for good reason. In Dunham, the court in Dunham, which incidentally is the only evidence of what Minnesota law is about how this statute works, and so under Barabow, this court's obligated to follow Dunham, the Dunham court held that to be harassing, the conduct or intent must be objectively unreasonable. So the actor must do something that's objectively unreasonable, and then the target must have an objectively reasonable belief that the conduct was substantially adverse to their safety, security, or privacy. So when you judge it against those two requirements, plaintiff's conduct here, which is sending three pre-prepared postcards and an email to an address that was listed on the web, that's simply not harassment under the statute. And even if it were, it's not something that Mike Freeman, as Hennepin County attorney, could prosecute on the posture that this case came before the court. I see you had a question. The statute can be used by others than the government, correct? Any victim of harassment, any intended target, can bring a petition for an ex parte HRO, that's true, yes. So there was one here by the law firm, and I think you just said that they came in and argued vociferously that it didn't apply. Is it in the record what the result of that was? Was it dissolved? It was dissolved. There was a hearing scheduled, and a bit of the context is important. The ex parte HRO was applied for and granted the next day, which is fairly common. And then the parties requested a hearing, and it was several months until there was a hearing. Before that hearing, on the day of that hearing, the parties settled, and the state court vacated the HRO. So Mr. Cardall didn't mention this, but there's not a pending HRO against them. And so in cases where this court has found an injury in fact, in a pre-enforcement context, the plaintiff's already in a position to carry out prescribed conduct and refuses to do so only because of fear of prosecution. Here, there is not a pending harassment restraining order, and even if there was, appellants don't allege an intent to commit a felony. In Minnesota, county attorneys prosecute felonies. So in order for a violation of an HRO to be a felony, you have to do something like have the violation be within a certain period of time of two or more domestic violence episodes, to be acting against the actor based on their participation in a protected class, or to commit a violation of an HRO in connection with another felony. So here, appellants, without an active HRO against them, say that they have a credible fear that Freeman might prosecute, but Freeman can't prosecute unless there's an active HRO, and then unless they violate an active HRO in connection with felony conduct. These appellants don't allege an intent to burgle a home and violent nature. Yes. So I found the provision, at least in the district court's opinion, it says they reached a settlement. That's correct. And it was vacated. I don't know what the terms of the settlement are, but I would bet they include that you quit sending postcards. And if so, I mean, isn't it at least arguable that that chills the First Amendment activity of the plaintiff? In other words, it could happen. If she starts sending postcards to the Frost firm again, there's going to be another HRO and at least a potential prosecution. I don't believe so, Your Honor, and that's because a private settlement, of course, is not a harassment restraining order. So I don't believe that under the statute, Freeman has the ability to go in and enforce private settlements. And because appellants haven't alleged an intent to commit a felony. The harassment restraining order statute, its work in Minnesota is to protect crime victims. So women who have been in assaultive relationships, children, people who, I mean, the conduct that you see in felony harassment cases simply looks nothing like the conduct that it should have. Well, the only problem with that is it's been used differently. It's being used in a manner like is before the court right now. There's no allegation in the case that the conduct, that the Hennepin County attorney has ever prosecuted any conduct looking anything like what appellants have done here. And more importantly. So who is the appellant supposed to sue in this case to get a remedy for what's arguably an unconstitutional limitation on the First Amendment? As Your Honor brought up in questioning, throughout the ex parte process and then in the course of the process about a harassment restraining order, appellants had ample opportunity to raise the issue of the constitutionality of their conduct in that proceeding. They could have taken it. They could not have settled. They could have taken that case through the state court and then up through the appellate court system in Minneapolis. They had ample opportunity to do so. So there are a couple of cases about outside the Eighth Circuit that I think are instructive here. And those are the Schirmer case and PETA. Schirmer is out of the Seventh Circuit and PETA is out of the Tenth. Both stand for the proposition that an issuance of essentially a mistake of law is not enough for a credible fear of prosecution. So in Schirmer, the issue was about people who were protesting in the city of Chicago who were arrested by the police for refusing to honor dispersal orders. And the police there got the statute wrong. Those protesters had not violated the law. Nonetheless, the Seventh Circuit held, even having been arrested, it wasn't good enough for credible fear of prosecution because the police officials in that case were wrong on the law. And the same is true in the Tenth Circuit in PETA. In PETA, you had animal rights protesters who protested at a junior high. And a police officer spoke to the Salt Lake City attorney who said, boy, that conduct sounds like it violates a statute. And the police officer came out and told the PETA protesters, you may not do that. Tenth Circuit finds no standing because even a clear misuse of the law is not a sufficient basis for a federal court to explore the statute's constitutionality. So we would urge the court to affirm, because the appellant's conduct is not harassment under Minnesota law, as the Dunham Court has indicated, because Freeman couldn't have prosecuted this even if he wanted to. And because under Shermer and PETA, even mistakes of the law are not sufficient to confer standing. If the panel has no further questions. So who made the mistake of law here? I think both the Frost Law Firm and the state court judge who issued the temporary harassment restraining order. We'd urge the court to affirm. Thank you. Thank you, Ms. Pierce. Hang on, Mr. Cardone. Hold up, counsel. With respect to the First Amendment effect, I kind of honed in on some things. It's important, as I was listening to my friend talk about, the automatic issuance or the ex parte proceeding. So you can see why whoever the judges are adjudicating authority there, that the other side doesn't get a say, and what happens is they're issued. And then the county attorney takes the position, well, you get a chance later to argue it, and then you get it dismissed. But the deterrence effect has already occurred. During the period of the issuance of the TRO ex parte, and then the head of the county or whoever gets involved, whether it's a court judge or whatever other parties, then it gets resolved. So there's that period where it's issued ex parte. Also, there's a concern about unequal power. So you had Attorney Frost as a law firm. My clients are basically like church ladies. They're sending out these little postcards trying to make a difference. And so at the initial hearing, if I hadn't been there, there was unequal power. She may have just allowed her First Amendment rights to be restricted, to avoid jail or whatever. And then you have the head of the county attorney there, available to enforce violations. One important procedural point is that after that initial hearing, the harassment restraining order is put on. That's different than order for protection for domestic situations. But once that's put on, the subsequent proceeding, there aren't any First Amendment defenses then, Your Honor. It's just violation of the harassment restraining order. And so it's that first hearing. You get the ex parte restriction on your speech or whatever, and then you go to that first hearing, and you've already lost because you've already been restricted. But hopefully you can win if you have capable counsel. The second point, we're again twice today back to the county attorney telling this court that pre-enforcement challenges should basically, by implication, be brought against courts and clerks. We cannot sue state courts and clerks to resolve pre-enforcement First Amendment challenges. That's not right. The U.S. Supreme Court repeated it on Friday. I agree with it. And what we need to do is find people who are connected to the enforcement scheme. And here, just like this morning, the county attorney is part of the enforcement scheme. So they're connected to the government, to the enforcement, to the statute. So they're the proper party to sue. And I agree that if the Hennepin County Attorney were involved in every one of these, just like in Office of Administrative Hearings, right from the beginning, the Hennepin County Attorney's Office was there with Ms. Frost, writing out the complaint, maybe this wouldn't have been brought. I'll give the Hennepin County Attorney's Office that credit. But they weren't there. It was Attorney Frost. It was her reading of the statute, her reading of the case law, and Hennepin County District Court issued it and it harmed my client. My client's fear of it happening again is related to how Hennepin County District Court operates, what the statute says. An attorney in our law firm followed through on it, it executed it, and I think that's enough for this court. I asked you about the mootness before, but I'll ask you again. The district court said that since CityPages is out of business, the issue is moot. And apparently, I assume, there's something in the record or some basis for the court to conclude that there weren't others that were receiving these cards for whom there might be additional cases. That's right. In the reply brief, we refer to the fact that we're targeting other organizations and that they target in the same areas, anti-pornography, anti-strip clubs, anti-female exploitation. So they continue to do that, but they've suspended those operations. It was never just about CityPages, but the complaint and harassment restraining order was about CityPages. We acknowledge that. Thank you. Madam Clerk, I believe that concludes our assigned cases for today. Thank you, Counsel, for both parties for the argument you provided to us in the briefing. And we will take the case under advisement. That being the conclusion of today's cases, the court will be in recess until tomorrow morning at 9 a.m.